## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

|  |  |  |
|---|---|---|
| **DAMESHIA PEEPLES,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **Case No. GLS 22-2218** |
| **LORRING PARK APARTMENTS,** | : | |
| **LLC et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION

Pending before this Court[1] are: "Augustine Roofing, LLC's Motion for Summary Judgment" ("Augustine's Motion") and "Defendant Lorring Park Apartments, LLC and ZPM Management, LLC's Motion for Summary Judgment" ("LPA/ZPM's Motion"). (ECF Nos. 102, 103). Third-Party Defendant Julio Ordonez ("Ordonez) filed a "Line Adopting Defendant Augustine Roofing, LLC's Motion for Summary Judgment." (ECF No. 104). Plaintiff Dameshia Peeples ("Plaintiff") filed Oppositions to Augustine's Motion and LPA/ZPM's Motion. (ECF Nos. 116–119). Defendant Augustine Roofing, LLC ("Defendant Augustine") and Defendants Lorring Park Apartments, LLC and ZPM Management, LLC ("LPA," "ZPM," and collectively "LPA/ZPM") filed Replies. (ECF Nos. 121–122). Accordingly, briefing on the issues is complete and the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023).

For the reasons set forth below, summary judgment is **GRANTED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court to conduct all further proceedings in this case, to include through trial, entry of final judgement, and resolution of post-judgment proceedings. (ECF Nos. 95, 97–99).

## I.      BACKGROUND

### A.  Procedural Background

Plaintiff filed a Complaint against Defendants LPA, ZPM, and Augustine, alleging that she suffered serious and permanent injuries on or about April 22, 2019 when the ceiling in her apartment collapsed in on her. (ECF No. 3, "Complaint"). In particular, Plaintiff advances negligence claims against all Defendants: Count I, against LPA, the owner of the apartment building; Count II, against, ZPM, the manager of the day-to-day operations of the apartment building; and Count III, against Augustine, the contractor hired to perform roof repairs on the apartment building. (*Id.*, pp. 3–4). Plaintiff maintains that as a result of the Defendants' negligence she sustained significant physical and neurological damage, which required extensive medical treatment. (*Id.*, p. 3). Specifically, Plaintiff alleges that because of Defendant Augustine's faulty repair work to the roof, and because Defendants LPA/ZPM failed to warn her of dangers related to the ceiling, she sustained the aforementioned injuries. (*Id.*, pp. 3–6).

On May 8, 2023, Defendant Augustine filed a Third-Party Complaint against Ordonez, seeking indemnification and contribution. (ECF No. 37). In that Third-Party Complaint, Defendant Augustine claims that it subcontracted the roof work on the apartment building to Ordonez, who actually performed the 2018/2019 roof repairs. (*Id.*, pp. 2–3). That same day, Defendant Augustine also filed a crossclaim against Defendants LPA/ZPM seeking indemnification and contribution. (ECF No. 38). Then, on May 17, 2024, Defendants LPA/ZPM filed a crossclaim against Defendant Augustine for indemnification or contribution. (ECF No. 84). Thereafter, Defendant Augustine filed a motion to strike Defendants LPA/ZPM's Crossclaim, which the Court denied. (ECF Nos. 85, 109).

Scheduling Orders were entered, discovery occurred and concluded, and summary judgment-related briefing was filed. (ECF Nos. 54, 69, 80, 102–104, 116–119, 121–123).

### B. Factual Background[2]

1. <u>Undisputed Facts</u>[3]

In or around July 2016, Plaintiff moved into Unit 301 at 2731 Lorring Drive, Forestville, MD. (Deposition of Dameshia Peeples, "Pl. Dep.," 22:16-22, JA0020–21, 46). At the time of the incident, Defendant LPA owned the building and Defendant ZPM was the property manager that managed the day-to-day operations of the apartment building. (Defendant Lorring Park Apartments, LLC's Responses to Defendant Augustine Roofing, LLC's Interrogatories, "LPA Ans. to Interrog.," at No. 5, JA0214). Defendants LPA and ZPM are both entities that are owned by Aulder Capital, LLC. (LPA Ans. to Interrog., at No. 5–6, JA0214).

On December 6, 2018, Defendants LPA/ZPM contracted with Defendant Augustine to perform roof repairs to the property. (JA0217–24). Between December 6, 2018 and February 19, 2019, Defendant Augustine, through its subcontractor Ordonez, completed roof repair work on the apartment building. (Defendant Augustine Roofing, LLC's Answers to Plaintiff's Interrogatories, "Augustine Ans. to Interrog.," at No. 27, JA0226).

On or about April 22, 2019, Plaintiff was in her bedroom in Unit 301 when her son informed her that there was water leaking from the ceiling in the living room. (Pl. Dep., JA0063). At that time, Plaintiff instructed her son to call the apartment building's maintenance personnel about the leak. (*Id.*). When Plaintiff entered the living room, she saw water coming from the

---

[2] The Court views all evidence in the light most favorable to the Plaintiff, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

[3] The parties submitted a Joint Appendix. (ECF No. 123, "JA"). Defendants' submissions can be found in this range: JA Nos. 0001–241. Plaintiff's submissions can be found in this range: JA Nos. 0241–44. The Court will refer to the documents contained therein as, e.g., JA0001.

ceiling, and recalls that there was a crack in the ceiling with the water dripping down. (Pl. Dep., JA0064, 66). The water was initially dripping slowly from the ceiling, but as it continued, began to speed up. (Pl. Dep., JA0067). Plaintiff seems to suggest that she placed a bowl on the floor under where the water was dripping from the ceiling and that, when she did, the ceiling collapsed on her. (Pl. Dep., JA0064–65). Pieces of the ceiling drywall/plaster struck Plaintiff on her right side, and she fell backwards, stunned. (Pl. Dep., JA0065). In particular, the piece of drywall/plaster hit Plaintiff's right forearm, impacting her arm from her forearm to her shoulder. (Pl. Dep., JA0072). After the ceiling collapsed, Plaintiff once again instructed her son to call the maintenance personnel and let them know that the ceiling had fallen in the apartment. (Pl. Dep., JA0075). Plaintiff recalls being stunned and in quite a bit of pain. (Pl. Dep., JA076). Half an hour to an hour later, a maintenance person came to the apartment. (*Id.*). The maintenance person offered to call an ambulance for Plaintiff, but she declined because, at the time, Plaintiff did not think her injuries were that serious and she was concerned about leaving her children alone in the unit. (*Id.*). The maintenance person nailed cardboard to the ceiling to cover the hole and advised Plaintiff to contact the apartment building's rental office in the morning to obtain an incident report. (Pl. Dep., JA0079).

The next morning, Plaintiff contacted the rental office and asked for a copy of the incident report. (Pl. Dep., JA0080). In the days following the ceiling's collapse, Plaintiff continued to call the rental office about repairing the ceiling. (Pl. Dep., JA0084–85). Plaintiff called about repairs every day, and each time she was told that someone would repair the ceiling. (Pl. Dep., JA0085). On the third day following the ceiling's collapse, Plaintiff contacted "the county code and enforcement office" and informed them of the apartment's condition. (Pl. Dep., JA0085–86). Shortly thereafter, an inspector came out to check the unit and informed Plaintiff that he would be

posting the unit as unfit for habitation, and that Plaintiff would need to vacate. (Pl. Dep., JA0087). Plaintiff and her children then stayed in a hotel while repairs to the ceiling were pending. (Pl. Dep., JA0087). Eventually, Plaintiff's ceiling was repaired. (Pl. Dep., JA0093). Plaintiff was never told what the cause of the ceiling's collapse was, and thus has no knowledge of what caused it to do so. (Pl. Dep., JA0094).

Plaintiff recalls that she had observed cracks and faint water stains on the ceiling when she first moved into the apartment in 2016. (Pl. Dep., JA0135–37). However, Plaintiff does not recall observing in 2016 any water stains in the area of the ceiling that collapsed. (Pl. Dep., JA00146). In addition, she cannot recall how many areas of the ceiling in the apartment were affected by discoloration or water stains in 2016, but maintains that most of the stains that she observed were in the dining room, living room, and the kitchen. (Pl. Dep., JA00135–36). Moreover, Plaintiff testified that the water stains and discoloration that she saw in 2016 were faint, and that she did not pay attention to the stains after that. (Pl. Dep., JA0137). Plaintiff further described the condition of the apartment in 2016 when she first moved in as "looking older" with "cracks and imperfections." (Pl. Dep., JA0147).

Plaintiff testified that in April 2019, prior to the ceiling's collapse, she had made requests to management for the maintenance and repair of "minor stuff," but does not recall specifically the repairs that she requested. (Pl. Dep., JA0048). However, prior to moving into the apartment in 2016, Plaintiff did not make any request for repairs or maintenance to be performed. (JA0047).

2.  Facts Related to the Cause of the Ceiling's Collapse

The Joint Appendix contains different evidence that purports to explain the cause of the ceiling's collapse.

5

*i.    Evidence Relied Upon by Plaintiff*

Defendant Augustine, through its subcontractor Ordonez, performed roof work at the apartment building between December 6, 2018 and February 19, 2019. (Augustine Ans. to Interrog., at No. 27, JA0226). Defendant Augustine was thereafter notified that Plaintiff's ceiling collapsed, and on April 26, 2019 Defendant Augustine inspected the roofing work that Ordonez had performed. (Augustine Ans. to Interrog., at No. 28, JA0226–27).

Also included in the Joint Appendix is a document that has the words "LABOR ORDER" at the top, and says "BUILDING EFFECTED (sic) 2731-301," which purportedly relates to Plaintiff's apartment. (JA0242). This document is dated April 26, 2019 and says: "remove 10 x 10 roof section surrounding nail pop; inspect plywood for issues; install new underlayment to plywood decking; install new shingles to match existing shingles." (*Id.*). The document further includes a note that states "not sure if nail pop or pipe that are generating condensation caused this issue." (*Id.*). This document is not authenticated, i.e., has no information about who wrote it, why it was written, and to whom it was sent, and by whom it was received.

Next, there is an April 29, 2019 email string with two parts: an email from someone named Phil Leonard, who has a ZPM email address, that says "were the shingles on it," to which someone named Natalie Nurse, who also has a ZPM email address, replies that " Per John with Augustine, the issue was that the nail was jammed incorrectly which caused the issue. About 2 bundles of shingles were replaced as well as plywood was replaced. The repair has completed." (JA0243).

Finally, there is an email string with two emails in it: the first, dated November 6, 2019, is from Phil Leonard, using a ZPM email address, and says "have we fixed any pipe in regards to this leak? [h]as this area leaked since Augustine made the repair? Thanks;" and the second, dated November 11, 2019, is from Natalie Nurse, using a ZPM email address, which says "Hi, I spoke

6

to Lori Westlund with James River Insurance Company. I explained that the pipes have not been repaired in the unit since the roof leak and that Augustine Roofing installed new shingles and plywood to the roof after the claim and we haven't had any issues since." (JA0244).

ii.    *Evidence Relied Upon by Defendant Augustine*

After the ceiling's collapse, Defendant Augustine conducted an inspection of the roof work performed by Ordonez, whereby it removed roof shingles and plywood and found that the roof plywood was dry and that there was no evidence of leaks. (Augustine Ans. to Interrog., at No. 28, JA0226–27). The inspection further revealed wet pipes in the attic, pinhole leaks in the copper pipes, and wet insulation above the ceiling directly below the pipes. (Augustine Ans. to Interrog., at No. 28, JA0227). Condensation had built up over time and contributed to the ceiling's collapse. (*Id.*). Defendant Augustine concluded that the cause of the ceiling's collapse was the buildup of water condensation due to leaky pipes above the ceiling of Plaintiff's apartment. (Augustine Ans. to Interrog., at No. 28, JA0226–27).[4]

iii.    *Evidence Relied Upon by Defendants LPA/ZPM*

Defendants LPA/ZPM appear to contend that the cause of the ceiling's collapse is unknown. (LPA/ZPM's Motion, pp. 2–3). In their briefing, Defendants LPA/ZPM only cite to the following facts: prior to moving into her apartment in 2016 Plaintiff had inspected the unit, but does not recall making any maintenance requests (Pl. Dep., JA0046–47); during her tenancy, Plaintiff made minor requests to management for maintenance repairs, (Pl. Dep., JA0048); and Plaintiff cannot recall if she observed any water stains on the living room ceiling prior to the ceiling's collapse. (Pl. Dep., JA0146–47).

---

[4] According to Defendant Augustine, this conclusion was "consistent with the findings of Defendant ZPM as referenced in Mr. Khibanai's email dated April 29, 2019." (*Id.*). There is no email from "Mr. Khibanai" in the record before the Court. *See* JA0001–244.

II.    **THE LAW**

**A.  Summary Judgment Standard**

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Wit Man Tom v. Hosp. Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). The burden can be satisfied through the submission of, e.g., deposition transcripts, answers to interrogatories, admissions, declarations, stipulations, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984); *see also* Fed. R. Civ. P. 56(c)(1)(A). When considering a motion for summary judgment, courts are only allowed to consider evidence that would be admissible at trial. *See Harvey v. Velasquez Contractor, Inc.*, Civ. No. GLS 19-1573, 2020 WL 5628976 at *2 (D. Md. Sept. 21, 2020) (explaining that "to be entitled to consideration at the summary judgment stage, the evidence supporting the facts set forth by the parties must be such as would be **admissible** in evidence" at trial (emphasis in original) (citing *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 349 (D. Md. 2011))); *see also* Fed. R. Civ. P. 56(c)(2).

The Court must construe the facts and documentary materials submitted by the parties in the light most favorable to the party opposing the motion. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). To defeat a motion for summary judgment, the nonmoving party cannot simply rest on allegations averred in its opposition or other brief. Rather, the

nonmoving party must demonstrate that specific material **facts** exist that give rise to a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323 (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1).

Summary judgment is inappropriate if sufficient evidence exists from which a reasonable jury may decide in favor of the non-movant. *Anderson*, 477 U.S. at 250. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006), and then citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002)). However, the "mere existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact. *Anderson*, 477 U.S. at 248.

### B. Negligence

Under Maryland law, in order for a plaintiff to prove negligence against a defendant, a plaintiff must establish the following elements: (1) that a defendant had a duty to protect the plaintiff from injury; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual loss or injury; and (4) that the loss or injury proximately resulted from the defendant's breach of its duty. *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1234–35 (Md. Ct. Spec. App. 2007) (citing *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999)).[5]

### C. *Res Ipsa Loquitur*

In Maryland, the doctrine of *res ipsa loquitur* "allows a plaintiff the opportunity to establish a prima facie case [of negligence] when he or she could not otherwise satisfy the traditional requirements for proof of negligence." *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 641

---

[5] *See also* Section III.C.2, *infra*.

(D. Md. 2012) (quoting *Vito v. Sargis & Jones, Ltd.*, 672 A.2d 129, 134 (Md. Ct. Spec. App. 1996)). This doctrine "permits (but does not require) a factfinder to use circumstantial evidence to infer negligence as the cause of an accident." *Morgan v. Dick's Sporting Goods, Inc.*, Civ. No. TJS 22-1633, 2024 WL 3819127, at *3 (D. Md. Aug. 14, 2024) (citing *Gillespie*, 861 F. Supp. 2d at 641) (further citation omitted). In addition, *res ipsa loquitur* "is a rule of evidence; it is not a rule of pleading or an independent cause of action." *Id.* (citing *Hughes v. Costco Wholesale Corp.*, Civ. No. LKG 23-2997, 2024 WL 2882179, at *3 (D. Md. June 7, 2024)).

To invoke the doctrine of *res ipsa loquitor*, a plaintiff must present evidence of:

> (1) a casualty of a kind that does not ordinarily occur absent negligence; (2) that was caused by an instrumentality exclusively in the defendant's control; and (3) that was not caused by an act or omission of the plaintiff.

*Gillespie*, 861 F. Supp. 2d at 640 (internal quotation marks omitted) (quoting *Holzhauer v. Saks & Co.*, 697 A.2d 89, 93 (Md. 1997)). When a plaintiff demonstrates the existence of facts supporting these elements, "[r]elaxation of the normal rules of proof is thought to be justified because the instrumentality causing injury is in the exclusive control of the defendant, and it is assumed [that] he is in the best position to explain how the accident happened." *Gillespie*, 861 F. Supp. 2d at 642 (internal quotation marks omitted) (quoting *Peterson v. Underwood*, 264 A.2d 851, 856 (Md. 1970)).

## III.    DISCUSSION

### A. *Res Ipsa Loquitur* Does Not Apply

#### 1.    The Parties' Arguments

In her Oppositions, Plaintiff asserts that she may recover against Defendants LPA/ZPM and Augustine by invoking the doctrine of *res ipsa loquitur*. (ECF No. 118; ECF No. 119, "Pl.

LPA/ZPM Opposition," pp. 5–9; ECF No. 116; ECF No. 117, "Pl. Augustine Opposition," pp. 6–9).[6]

Defendant Augustine submits that *res ipsa loquitur* is not applicable. Specifically, Defendant Augustine asserts that Plaintiff may not invoke *res ipsa loquitur* to establish a *prima facie* case of negligence because there are "multiple defendants and multiple conflicting theories of events." (ECF No. 121, "Augustine's Reply," p. 1). "[W]hile other litigants blame bad roofing work, Augustine denies liability and instead blames [Defendants LPA/ZPM's] failure to maintain their pipes," and Plaintiff "has not shown that any one theory is more probable than any other." (*Id.*). Alternatively, Plaintiff cannot show that Defendant Augustine had joint or exclusive control over the injury-inducing factor. (*Id.*, pp. 2–5).

Defendants LPA/ZPM contend that Plaintiff cannot invoke *res ipsa loquitur* to establish a *prima facie* case of negligence because: (a) Plaintiff cannot show the injury-inducing factor was in Defendants LPA/ZPM's exclusive control; and (b) Plaintiff has not established that the incident is the kind that does not ordinarily occur absent negligence. In addition, Defendants LPA/ZPM assert that the cause of the ceiling's collapse requires expert testimony. (ECF No. 122, "LPA/ZPM's Reply," pp. 1–6).

2.  <u>Analysis Related to *Res Ipsa Loquitur*</u>

In some cases, a plaintiff may invoke the doctrine of *res ipsa loquitur* to establish a p*rima face* case of negligence provided she establish the three essential elements. *See Morgan*, 2024 WL 3819127, at *3.

i.   *The First and Third Elements*

Here, construing the facts in the light most favorable to Plaintiff, Plaintiff has satisfied the

---

[6] As set forth earlier, Third-Party Defendant Ordonez adopts the arguments of Defendant Augustine.

first and third elements of *res ipsa loquitur*.

Regarding the first element, construing the facts in the light most favorable to Plaintiff, a reasonable jury could find that applying "common sense and experience," it is reasonable to conclude that a ceiling does not ordinarily collapse in on a tenant absent negligence. *Gillespie*, 861 F. Supp. 2d at 643 (rejecting the defendant's contention that expert testimony is required to understand how the lamp was soldered because commons sense leads to the conclusion that lamps do not fall from the ceiling absent negligence). Regarding the third element, there is no evidence in the record before the Court that Plaintiff interfered with or engaged in any conduct that caused the ceiling to collapse on her. *See* JA0001–244. Accordingly, the third element is also satisfied.

       *ii.    The Second Element*

Even though Plaintiff has established the first and third elements, to invoke the doctrine of *res ipsa* loquitur, Plaintiff must establish the second element: evidence that the incident occurred because of an instrumentality in the Defendants' exclusive control.

It is well settled that Maryland's highest court has "decline[d] to extend the doctrine of res ipsa loquitur to a case against multiple defendants absent a showing that their liability was joint or that they were in joint or exclusive control of the injury producing factor." *Giant Food, Inc. v. Wash. Coca-Cola Bottling Co.*, 332 A.2d 1, 7 (Md. 1975); *see also Danner v. Int'l Freight Sys. of Wash., LLC*, 855 F. Supp. 2d 433, 470 (D. Md. 2012). In *Giant Food, Inc.*, the plaintiff sought to bring negligence claims against both the retailer and the bottle manufacturer for injuries caused by an exploding bottle under a theory of *res ipsa loquitur*. 332 A.2d at 3–4. Maryland's highest court held that the plaintiff could not invoke the doctrine of *res ipsa loquitur* as to both defendants because they were not in joint or exclusive control of the injury inducing factor. *Id.* at 7. However, in affirming the lower court's ruling, the appellate court held that the plaintiff was entitled to an

instruction on *res ipsa loquitur* as to the retailer because the court found that the plaintiff's injury was more likely caused by the retailer's negligence than the manufacturer's actions, and the plaintiff had separately met the elements of *res ipsa loquitur* as to the retailer. *Id.* at 4–6.

Here, Plaintiff has alleged that the injury-inducing factor that caused the ceiling's collapse is faulty roof work. (Complaint, pp. 5–6). For Defendant Augustine, she alleges that its failure to perform that repair work in a reasonable manner led to her injuries. (*Id.*, ¶¶ 28–29). For Defendants LPA/ZPM, she generically alleges a failure to inspect and warn against any foreseeable dangers involving the ceiling. (*Id.*, ¶¶ 13–15, 20–21). Reading these paragraphs in tandem then, Plaintiff's theory is that Defendant Augustine performed faulty roof work that caused the ceiling's collapse and injured her, and Defendant LPA/ZPM, by hiring Defendant Augustine to do the roof work, had a duty to inspect the ceiling before any work was done on the roof and had a duty to warn Plaintiff that the ceiling could collapse; i.e., that because the roof needed work, it was foreseeable that the ceiling in her apartment would collapse.

As previously held, Plaintiff has satisfied the first and third elements. To establish the element of exclusive control, a plaintiff who relies on *res ipsa loquitur*, need not rule out "every possible cause of injury" but instead must simply produce "proof that there is a greater likelihood that injury was caused by the defendant's negligence than by some other cause." *Giant Food, Inc.*, 332 A.2d at 5. Put another way, the evidence adduced must demonstrate that no third-party or other intervening force contributed more probably than not to the incident. *District of Columbia v. Singleton*, 41 A.3d 717, 723 (Md. 2012). The Court will now analyze the second element.

As to Defendant Augustine, construing the facts in the light most favorable to Plaintiff, the Joint Appendix contains facts that support that roof work was done. However, in order to establish that the injury inducing factor was the "nail" that was jammed incorrectly that "caused the issue,"

only inadmissible evidence has been put before the Court. (JA0243). Indeed, the first piece of evidence related to this theory is an unauthenticated document that is dated after the incident, that includes hearsay. (JA0242). The November email chains, are also inadmissible because they contain hearsay. (JA0243–44). There is no other admissible evidence in the Joint Appendix that a nail was jammed incorrectly and caused the ceiling to collapse. *See* JA0001–244. Accordingly, because courts are only allowed to consider evidence that would be admissible at trial, *see Harvey*, 2020 WL 5628976 at *2, Plaintiff has failed to meet her burden as to the second element by producing admissible evidence that the injury-inducing factor was in the exclusive control of Defendant Augustine. Accordingly, as a matter of law, Plaintiff cannot avail herself of the doctrine of *res ipsa loquitur* to establish a *prima facie* case of negligence against Defendant Augustine.

As to Defendants LPA/ZPM, even when construing the facts in the light most favorable to Plaintiff, Plaintiff has failed to establish that these Defendants had exclusive control over the injury-inducing factor, i.e., the purported faulty roof repair work that Plaintiff alleges caused the ceiling to collapse. The evidence in the record reflects that Defendants LPA/ZPM hired Defendant Augustine to perform roof work on the apartment building. (JA0217–24). Between December 6, 2018 and February 19, 2019, Defendant Augustine, through its subcontractor Ordonez, performed repair work to the apartment building roof. (Augustine Ans. to Interrog., at No. 27, JA0226). Thereafter, on or about April 22, 2019, the ceiling in the apartment collapsed on Plaintiff. (Pl. Dep., JA0063–66). Plaintiff has not put before the Court admissible evidence that Defendants LPA/ZPM were in exclusive control of the injury-inducing factor, i.e., the nail that was "jammed incorrectly." *See* JA0001–244. In addition, there is no evidence before the Court that establishes that Defendants LPA/ZPM engaged in any conduct or had control over any part of the roof work performed that allegedly caused the ceiling to collapse in Plaintiff's unit. *See* JA0001–244. Instead,

14

if one credits Plaintiff's theory of liability, there is only inadmissible evidence before the Court that Defendant Augustine performed the work that more probably than not caused the ceiling to collapse. (JA00242–44). *See Singleton*, 41 A.3d at 723 (holding that "a res ipsa inference of the defendant's negligence is not permissible where an intervening force may have precipitated the accident"). Accordingly, as a matter of law, Plaintiff cannot avail herself to the doctrine of *res ipsa loquitur* to establish a *prima facie* case of negligence against Defendants LPA/ZPM.

In sum, Plaintiff cannot rely upon *res ipsa loquitur*. Thus, the Court will analyze whether, when construing the admissible evidence in the light most favorable to the Plaintiff, a reasonable jury could find the Defendants LPA/ZPM and/or Augustine negligent under Maryland law.

### B. Plaintiff's Negligence Claim Against Defendant Augustine

Plaintiff advances Count III against Defendant Augustine, alleging that it negligently failed to perform roof-related work in a safe and prudent manner thereby causing the ceiling to collapse in on Plaintiff while she was in her apartment. (Complaint, pp. 5–6).

#### 1. The Parties' Arguments

Defendant Augustine contends that it is entitled to summary judgment for two reasons. First, there is no evidence that it, through its subcontractor Ordonez,[7] breached its duty of reasonable care in performing the roof work. According to Defendant Augustine, expert testimony is required in this case: to establish the duty of care owed to Plaintiff in repairing the roof; the breach of that duty by Defendant Augustine; and how that breach caused Plaintiff's injury. Relatedly, Defendant Augustine asserts that Plaintiff cannot meet her burden because she failed to designate an expert witness consistent with Fed. R. Civ. P. 26(a)(2). In addition, Defendant Augustine contends that "Plaintiff has not presented any evidence of a defect in the roof" or "what

---

[7] Defendant Augustine does not dispute that Ordonez was acting on its behalf, as its agent/employee, when Ordonez conducted the roof repair on the apartment building.

condition or defect existed that could have led to a ceiling collapse and whether that condition or defect did, in fact, result in the ceiling['s] collapse." (Augustine's Motion, pp. 8–9). In sum, Defendant Augustine asserts that no reasonable jury could conclude that it breached a duty of care in performing the roof work or that its repair work caused the ceiling to collapse and injure Plaintiff. (Augustine's Motion, pp. 6–10).

Plaintiff counters that as a business invitee, Defendant Augustine owed her a duty of care and breached that duty because Defendant Augustine had constructive, if not actual, notice of the dangerous condition that led to the ceiling's collapse. Plaintiff further appears to contend that following the collapse of the ceiling, Defendant Augustine performed repairs on the roof to correct the issues that caused the ceiling to collapse. (Pl. Augustine Opposition, pp. 2, 6–10).

In the Reply, Defendant Augustine avers that summary judgment is appropriate because Plaintiff's argument regarding a duty owed to a business invitee is not applicable to Defendant Augustine. Instead, Plaintiff must establish the duty owed by Defendant Augustine to Plaintiff regarding its repair work and a breach of duty related thereto, which Defendant Augustine contends requires expert testimony. Ultimately, Defendant Augustine maintains that there is no admissible evidence that it acted negligently, and that no reasonable juror could so find. (Augustine's Reply, pp. 2–6).

### 2. Analysis Related to Negligence

As a preliminary matter, there is no evidence in the record that before Defendant Augustine performed its repair work there was a defect in the ceiling, nor is there any evidence that a dangerous condition related to the ceiling existed. *See* JA0001–244. Similarly, there is no evidence in the record that, when it repaired the roof in 2018/2019, Defendant Augustine became aware of a condition or defect that could or would cause the ceiling in Plaintiff's apartment to collapse. (*Id.*).

While there is some evidence in the record of wet or leaky pipes, there is no evidence before the Court that Defendant Augustine, through its subcontractor Ordonez, was aware of that condition prior to or at the time that the roof work was performed. (Augustine Ans. to Interrog., at No. 28, JA0226–27).

In addition, in opposing summary judgment, Plaintiff relies on inadmissible evidence. As previously held, the document titled "LABOR ORDER" and the email strings are not admissible evidence that the Court can consider at the summary judgment stage, as they are unauthenticated and contain hearsay. When considering a motion for summary judgment, courts are only allowed to consider evidence that would be admissible at trial. *See Harvey*, 2020 WL 5628976 at *2 (citing *Casey*, 823 F. Supp. 2d at 349); *see also DeWitt*, 2017 WL 3116609, at *6; Fed. R. Civ. P. 56(c)(2). Therefore, the Court will not consider them in its analysis. Second, as Defendant Augustine correctly points out, any evidence of remedial repairs is inadmissible under Fed. R. Evid. 407 to establish liability. Thus, to the extent that Plaintiff claims that Defendant Augustine's remedial work is evidence that Defendant Augustine's original repairs caused the ceiling to collapse, the Court will not consider such evidence for that purpose in its analysis.

Turning to the admissible evidence in this case, when constructing the evidence in the light most favorable to Plaintiff, such evidence reflects that between December 6, 2018 and February 19, 2019, Defendant Augustine performed roof work on the apartment building. (Augustine Ans. to Interrog., at No. 27, JA0226). Thereafter, on or about April 22, 2019, the ceiling in Plaintiff's apartment collapsed on her and a piece of ceiling drywall/plaster struck her causing her injury. (Pl. Dep., JA0063–66). After the ceiling collapsed, Defendant Augustine performed an inspection of the roof work, where it removed roof shingles and plywood and found that the roof plywood was dry and that there was no evidence of leaks. (Augustine Ans. to Interrog., at No. 28, JA0226–27).

Defendant Augustine therefore concluded that leaky pipes led to condensation build up over time that contributed to the ceiling's collapse. (*Id.*). Thus, the only admissible evidence in the record that a jury could credit reflects that it was not Defendant Augustine's work but leaky pipes that were the cause of the ceiling's collapse. Fed. R. Civ. P. 56(c)(1)(A) (interrogatory answers may properly be considered by a court when ruling on a summary judgment motion).

Accordingly, even when viewing the facts in the light most favorable to Plaintiff, she has failed to put admissible evidence before the Court from which a reasonable jury could conclude that Defendant Augustine, through its subcontractor Ordonez, negligently performed work that caused the ceiling to collapse. Therefore, summary judgment will be granted as to Defendant Augustine and by extension Third-Party Defendant Ordonez. The Court need not address the additional arguments related to expert testimony.

In sum, summary judgment as to Count III is granted.

### C.  Plaintiff's Negligence Claims Against Defendants LPA/ZPM

Plaintiff advances Counts I and II against Defendants LPA/ZPM, alleging that they were negligent when they failed to properly inspect the ceiling of the apartment and failed to warn Plaintiff of foreseeable dangers related to the ceiling's collapse. (Complaint, pp. 3–4).

#### 1.  The Parties' Arguments

Defendants LPA/ZPM contend that summary judgment in their favor is appropriate for two reasons. First, expert testimony is required to establish that Defendants LPA/ZPM created a dangerous condition because the cause of the structural failure of the ceiling in Plaintiff's apartment is beyond the ken of the average juror. Second, Plaintiff has failed to produce evidence that Defendants LPA/ZPM had actual or constructive notice of the condition of the ceiling above her apartment before it collapsed. In sum, Defendants LPA/ZPM submit that no reasonable juror

could conclude that they created a dangerous condition or had actual or constructive notice of a dangerous condition; thus, entry of summary judgment in their favor is required. (LPA/ZPM's Motion, pp. 4–8).

Plaintiff counters that, because she is a business invitee, Defendants LPA/ZPM owed her a duty of care to warn of foreseeable dangers to their tenants and breached that duty when they failed to exercise ordinary and reasonable care, as evidenced by their constructive or actual notice of the faulty roof work that caused the ceiling to collapse. (Pl. LPA/ZPM Opposition, pp. 5–10).

In the Reply, Defendants LPA/ZPM maintain that summary judgment is appropriate because Plaintiff cannot establish that they had actual or constructive notice of the ceiling's dangerous condition because there is no evidence that Defendants LPA/ZPM knew of, or could have discovered, the alleged defect. (LPA/ZPM's Reply, pp. 2–6).

2.  Analysis Related to Negligence

As a preliminary matter, no presumption of negligence arises merely because Plaintiff was injured in the apartment building. *See Kirchoff v. Abbey*, Civ. No. WMN 10-1532, 2011 WL 4711898, at *3 (D. Md. Oct. 5, 2011) (citing *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 719, A.2d 119, 123 (Md. 1998)).

In Maryland, "[g]enerally, a property owner has a duty to exercise reasonable care to keep its premises safe for its tenants and its tenant's family, guests and invitees." *Kirchoff*, 2011 WL 4711898, at *3 (citing *Matthews*, 719, A.2d at 123). However, "a landlord is not an insurer of its tenant's safety." *Id.* A landlord's duty, is confined to protecting only against "known or reasonably foreseeable risks." *Id.* Thus, the landlord's duty is limited to protecting against only "those risks that are known or reasonably foreseeable." *Id.* (citing *Scott v. Watson*, 359 A.2d 548, 554 (Md. 1976)).

Notably, Maryland courts have emphasized that "[i]n determining whether a duty exists 'where the risk created is one of personal injury . . . the principal determination of duty becomes foreseeability.'" *Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship.*, 826 A.2d 443, 454 (Md. 2003) (quoting *Matthews*, 719 A.2d at 127). In order "[t]o establish foreseeability, the plaintiff must present facts showing that a person of ordinary intelligence, who is equipped with the knowledge of the dangerous condition, should realize the danger posed by that condition." *Id.* Put another way, "a particular harm is foreseeable if a person of ordinary prudence should realize that the condition of which he or she has notice, enhances the likelihood that the harm will occur." *Id.*

Here, even when construing the facts in the light most favorable to Plaintiff, there is no evidence that Defendants LPA/ZPM either knew or should have known of any dangers related to the ceiling before it collapsed in Plaintiff's apartment. First, the admissible evidence in the Joint Appendix reflects that Plaintiff recalls that she had observed cracks and faint water stains on the ceiling when she first moved into the apartment in 2016. (Pl. Dep., JA0135–37). However, Plaintiff does not recall observing in 2016 any water stains in the area of the ceiling that collapsed in 2019. (Pl. Dep., JA00146). In addition, Plaintiff cannot recall how many areas of the ceiling in the apartment in 2016 were affected by discoloration or water stains, but generally just describes that most of the stains were in the dining room, living room, and the kitchen. (Pl. Dep., JA00135–36). Prior to moving into the apartment in 2016, Plaintiff did not make any request for repairs or maintenance to be performed. (JA0047). Moreover, Plaintiff testified that the water stains and discoloration that she saw in 2016 were faint, and that she did not pay attention to the stains after that. (Pl. Dep., JA0137). Plaintiff further testified that in April 2019, prior to the ceiling's collapse, she had made requests to management for the maintenance and repair of "minor stuff," but does not recall specifically the repairs that she requested. (Pl. Dep., JA0048). However, there is no

20

evidence before the Court that the purported maintenance or repair requests were related to the water stains. Thus, even when construing the facts in the light most favorable to Plaintiff, no reasonable jury could conclude that the stains or cracks put Defendants LPA/ZPM on notice of a defect or dangerous condition in the ceiling or that Defendants LPA/ZPM otherwise knew of any defects in, or dangers posed by, the ceiling in Plaintiff's unit. Nor could a reasonable jury conclude that it was reasonably foreseeable to Defendants LPA/ZPM that because of the stains or cracks in the ceiling there was a risk that it would collapse. *See Hemmings*, 826 A.2d at 454 (holding that a harm is foreseeable if a landlord, when equipped with knowledge of the condition, should realize the danger related to the same).

Second, there is no admissible evidence in the record from which a reasonable jury could conclude that Defendants LPA/ZPM knew or should have known before the ceiling collapsed that the roof work was faulty. *See* JA0001–244.[8] Any such evidence is inadmissible and post-dates the ceiling's collapse. (JA0242–44). Thus, even construing the facts in the light most favorable to Plaintiff, no reasonable jury could find that the ceiling's collapse was a foreseeable harm that Defendants LPA/ZPM had a duty to warn Plaintiff about.

Accordingly, because Plaintiff has not shown that the admissible evidence before the Court is relevant to Defendants LPA/ZPM's duty to warn, Plaintiff has failed to establish an essential element of her negligence claims and summary judgment must be granted in Defendants LPA/ZPM's favor.

In sum, summary judgment as to Counts I–II is granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Augustine's Motion, (ECF No. 102), is **GRANTED**

---

[8] *See* Sections III.A.2.ii and III.B.2. *supra*.

and Defendants LPA/ZPM's Motion, (ECF No. 103), is **GRANTED**.

      A separate Order will follow.

Date: June 26, 2025

                                               /s/
                              The Honorable Gina L. Simms
                              United States Magistrate Judge